In the Matter of the Estate of AGNES CARVEL, Deceased. LEONARD M. ROSS, Respondent; BETTY GODLEY et al., Respondents, and THOMAS AND AGNES CARVEL FOUNDATION, Appellant. [948 NYS2d 322]—

The appeal from the intermediate order dated January 4, 2011, must be dismissed because the right of direct appeal therefrom terminated with the entry of the decree in the proceeding (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order dated January 4, 2011, are brought up for review and have been considered on the appeal from the decree (*see* CPLR 5501 [a] [1]).

In this probate proceeding, Leonard M. Ross, as ancillary administrator c.t.a. of the estate of Agnes Carvel (hereinafter the petitioner), petitioned to settle his final account. The Thomas and Agnes Carvel Foundation (hereinafter the Foundation) objected to the petitioner's request to distribute the sum of $10,372,884.04 from the assets of Agnes Carvel's ancillary estate, representing income Agnes Carvel should have, but did not, receive during her lifetime from a certain marital trust, to Guy Richard Greenhous, as judicial trustee of the domiciliary United Kingdom estate of Agnes Carvel (hereinafter the judicial trustee). The Foundation contended that it was the sole residuary beneficiary of Agnes Carvel's estate and that the Surrogate's Court should direct the petitioner to distribute the subject trust income directly to it rather than to the judicial trustee.

Following a nonjury trial, the Surrogate's Court determined that the subject trust income had been wrongfully withheld from Agnes Carvel during her lifetime and that, as a matter of equity, the Foundation should not be entitled to the subject trust income. Accordingly, the Surrogate's Court concluded that the subject trust income that was marshaled by the petitioner should be distributed to the judicial trustee.

"Ancillary administration in this state is regulated by statute" (*Lockwood v United States Steel Corp.*, 209 NY 375, 380 [1913]; *see* SCPA art 16). "Apart from the statute, all administrations of estates in different countries are independent, so far as a matter of strict right or jurisdiction; but as a matter of

comity all administrations in countries other than that of the domicile are ancillary to the principal administration" (*Lockwood v United States Steel Corp.*, 209 NY at 380 [internal quotation marks omitted]).

"[T]he essential, underlying function of ancillary proceedings [is] to obtain control and possession of New York assets of a nondomiciliary, to satisfy New York creditors, and to transfer remaining assets to the domiciliary administrator" (*Matter of Obregon*, 91 NY2d 591, 603 [1998]; *see* SCPA 1609, 1610; *see also* 7-96 Warren's Heaton, Surrogate's Court Practice § 96.26 [2] [a] [2012]; 4-16 New York Civil Practice: SCPA 1610.04 [2012]; 1-19 Turano & Radigan, New York Estate Administration § 19.01 [f] [2011]).

"While the Surrogate's Court or any court of the state having jurisdiction may direct the ancillary fiduciary to distribute the remaining assets after the payment of creditors and expenses to those entitled thereto or to otherwise dispose of the assets as justice requires, the court does not usually avail itself of this power" (7-96 Warren's Heaton, Surrogate's Court Practice § 96.26 [2] [a] [2012]; *see* SCPA 1610 [3]; *Matter of Kellner*, 108 Misc 2d 667, 669 [1981] ["'(a)bsent unusual circumstances, this court would decline jurisdiction over a petition by a distributee to compel an ancillary executor in this State to make a distribution"]).

The determination of whether to direct an ancillary fiduciary to distribute the remaining assets is left to the provident exercise of "judicial discretion under the circumstances of the particular case" (*Despard v Churchill*, 53 NY 192, 200 [1873]; *see Matter of Hughes*, 95 NY 55, 59 [1884]; *Matter of Bourne*, 82 Misc 2d 824, 827 [1975]). "Unless a court shall direct the ancillary fiduciary to distribute the assets as provided in [SCPA 1610 (1)—(3),] he [or she] is required to transmit the remaining assets to the state or country where domiciliary letters were granted to be disposed of pursuant to the law thereof" (SCPA 1610 [4]; *see* 3-47 Warren's Heaton, Surrogate's Court Practice § 47.07 [2] [2012]).

Here, under the circumstances presented, the Surrogate's Court providently exercised its discretion when it declined to direct the petitioner to distribute the subject trust income directly to the Foundation rather than to the judicial trustee (*see Despard v Churchill*, 53 NY at 200). The Foundation failed to demonstrate the existence of circumstances warranting the exercise of the authority of the Surrogate's Court to directly distribute the subject trust income pursuant to SCPA 1610 (3). To the contrary, the Surrogate's Court cited facts tending to

demonstrate that the subject trust income should be "transmit-[ted] . . . to the state or country where domiciliary letters were granted to be disposed of pursuant to the law thereof" (SCPA 1610 [4]).

Furthermore, contrary to the Foundation's contention that the decree should have provided that the ancillary estate of Agnes Carvel and the domiciliary United Kingdom estate of Agnes Carvel should each pay for their own respective administration expenses, the decree properly directed that those expenses be paid from a 1991 trust established by Agnes Carvel (*see Matter of Chase Manhattan Bank*, 6 NY3d 456, 460 [2006]; *Mercury Bay Boating Club v San Diego Yacht Club*, 76 NY2d 256, 267 [1990]).

The Foundation's remaining contentions are without merit. Skelos, J.P., Florio, Lott and Miller, JJ., concur.