934 So.2d 1238 (2006)
CITY OF HOLLYWOOD, Petitioner,
v.
Colon Bernard MULLIGAN, Respondent.
No. SC04-990.
Supreme Court of Florida.
July 6, 2006.
*1240 Daniel L. Abbott, City Attorney, Hollywood, FL, for Petitioner.
Ronald S. Guralnick, Miami, FL, for Respondent.
Robert S. Glazier, Miami, FL, Maria Chiaro, Interim City Attorney and Warren Bittner, Assistant City Attorney, Miami, FL on behalf of City of Miami; Edward G. Guedes and Harriet R. Lewis of Weiss, Serota, Helfman, Pastoriza, Guedes, Cole and Boniske, P.A., Miami, FL on behalf of City of Dania Beach, FL and City of West Palm Beach, FL; Keith W. Davis of Corbett and White, P.A., General Counsel, Lake Worth, FL on behalf of the Palm Beach County League of Cities, Inc., for Amici Curiae.
BELL, J.
The Fourth District Court of Appeal has certified the following question to us as one of great public importance:
Does the Florida Contraband Forfeiture Act preempt local governments from adopting ordinances imposing forfeiture of personal property for misdemeanor offenses?
Mulligan v. City of Hollywood, 871 So.2d 249, 257 (Fla. 4th DCA 2003).[1] The Fourth District answered this question in the affirmative. We rephrase the question as follows:
Does the Florida Contraband Forfeiture Act (FCFA), sections 932.701-.707, Florida Statutes (2002), preempt a municipality from adopting an ordinance that authorizes the seizure and impoundment of vehicles used in the commission of certain misdemeanor offenses?
We answer this rephrased question in the negative. We hold that the FCFA does not preempt a municipality from using its home rule powers to enact such an ordinance. Therefore, we quash the decision of the Fourth District and remand this *1241 case for further proceedings consistent with this opinion.

I. FACTS
This case arose from a suit brought by Colon Bernard Mulligan (Mulligan) against the City of Hollywood (City) challenging the validity of the City's vehicle impoundment ordinance, section 101.46, Hollywood, Florida, Code of Ordinances (1999). Mulligan was arrested by City police officers for soliciting a prostitute in violation of section 796.07, Florida Statutes (2000), a misdemeanor offense. Because Mulligan was in his vehicle at the time of the solicitation, the police officers seized and impounded his vehicle pursuant to the City's ordinance.
As provided by the ordinance, Mulligan appeared before a special master and argued that the seizure was not supported by probable cause. The special master disagreed. Finding probable cause to support the seizure, the special master imposed the sanction as provided for in the ordinance. The special master ordered Mulligan to either pay a $500 administrative fine or forfeit the bond he had previously posted. Mulligan paid the administrative fine, and the vehicle was returned to him.
Mulligan then brought suit against the City seeking a declaratory judgment that the ordinance is invalid. The action was certified as a class action, and Mulligan was named class representative. Mulligan and the City filed cross-motions for summary judgment. The trial court granted the City's motion for summary judgment.
On appeal, the Fourth District reversed. Finding that the ordinance "effects a criminal forfeiture" of the vehicles seized and is therefore "a forfeiture scheme," Mulligan, 871 So.2d at 252, the Fourth District held the ordinance is preempted by or, in the alternative, is in conflict with the FCFA. Id. at 256.

II. ANALYSIS
As stated earlier, we hold that the FCFA does not preempt municipalities from adopting ordinances authorizing the seizure and impoundment of vehicles used in the commission of enumerated misdemeanor offenses. After we explain our rationale for this holding on the primary question of preemption, we turn to the alternative basis the Fourth District relies on to invalidate the ordinance. This alternative basis is that the FCFA and the ordinance conflict. As we explain, the ordinance does not conflict with the FCFA. However, in this discussion, we do note our agreement with the Fourth District that the ordinance raises significant constitutional concerns. Finally, we explain the distinction between an impoundment and a forfeiture which prompted our rephrasing of the certified question.

A. The FCFA Does not Preempt the Adoption of Municipal Ordinances Authorizing the Seizure and Impoundment of Vehicles
In analyzing the preemption question, we (1) describe the City's ordinance; (2) highlight the law of preemption; (3) discuss the FCFA; and, finally, (4) apply the law of preemption to the ordinance and the FCFA. As for our standard of review, the Fourth District's ruling on the validity of the ordinance is a question of law subject to de novo review by this Court. See State v. J.P., 907 So.2d 1101, 1107 (Fla. 2004) (finding that rulings on the constitutionality of several ordinances should be reviewed de novo) (citing City of Miami v. McGrath, 824 So.2d 143, 146 (Fla.2002)).

*1242 1. The City's Ordinance
Section 101.46 of the Hollywood, Florida, Code of Ordinances is entitled "Vehicle Impoundment." This ordinance was enacted on May 5, 1999, as part of ordinance 0-99-12.[2] Its purpose is to aid the City's law enforcement in deterring crimes related to drugs and prostitution. The ordinance authorizes the seizure and impoundment of motor vehicles whenever a police officer has probable cause to believe that the vehicle (1) contains cannabis or a controlled substance under chapter 893 of the Florida Statutes; (2) was used to purchase or attempt to purchase cannabis or a controlled substance; or (3) was used to facilitate the commission of an act of prostitution, assignation, or lewdness pursuant to section 796.07, Florida Statutes. § 101.46(A), Ord. Significantly, each of the offenses enumerated in the ordinance is a misdemeanor crime, and, by its express terms, the ordinance does not apply when a vehicle is subject to seizure under the FCFA. § 101.46(C), Ord.
The ordinance requires that upon seizing and impounding a vehicle for one or more of the enumerated misdemeanor offenses, the City's police officers must follow a number of procedures. The officer must provide written notice to the owner of the vehicle or the person in control of the vehicle that the vehicle is being impounded by the City of Hollywood Police Department and that there is a right to request a preliminary hearing. § 101.46(B), (D), Ord. This notice must be delivered either by hand or, if the owner or operator is not available, by certified mail within five days. Id. An owner or operator may request a preliminary hearing, and, if requested, the hearing must be held within ninety-six hours. This preliminary hearing is held before a code enforcement official called a special master who, according to the City, is appointed pursuant to chapter 162, Florida Statutes, in lieu of appointing a local government code enforcement board. See § 162.03, Fla. Stat. (1999). The City bears the burden of showing that the seizure was supported by probable cause. § 101.46(D), Ord. If probable cause is shown, the owner can regain possession of the vehicle only by paying an administrative fee of up to $500 plus towing and storage costs or by posting a bond in the same amount. Id. If probable cause is not shown, the vehicle is released, and the vehicle owner is not liable for any costs. Id.
If the owner does not request a preliminary hearing, or if the special master finds probable cause for the seizure at the preliminary hearing, the City schedules a final hearing and notifies the vehicle owner. § 101.46(E), Ord. The final hearing must occur no later than forty-five days after the date that the vehicle is impounded. Id. At the final hearing, the City must establish by a preponderance of the evidence that the vehicle was (1) properly impounded pursuant to the ordinance and (2) that the owner of the vehicle either knew or should have known that the vehicle was used or was likely to be used in violation of the ordinance. Id. If the City fails to establish either of these elements, the vehicle is returned to the owner without penalty. Id. If the special master finds that the vehicle is subject to impoundment, an order is then entered finding the record owner of the vehicle civilly liable to the City for an administrative fee, not to exceed $500, as well as towing and storage costs. Id. The vehicle remains *1243 impounded until the administrative fees are satisfied. The funds recovered are allocated, first, as reimbursement to the police department for costs incurred in enforcing the ordinance (towing and storage), and second, as surplus to the City's general fund. § 101.46(G), Ord. Unclaimed vehicles are subject to Florida's provisions for the disposition of lost or abandoned property contained in chapter 705, Florida Statutes (1999). § 101.46(F), Ord.

2. The Law of Preemption
In Florida, a municipality is given broad authority to enact ordinances under its municipal home rule powers. Art. VIII, § 2(b), Fla. Const.; § 166.021(1), (3)(c), (4), Fla. Stat. (1999).[3] Under its broad home rule powers, a municipality may legislate concurrently with the Legislature on any subject which has not been expressly preempted to the State. Wyche v. State, 619 So.2d 231, 237-38 (Fla. 1993) (citing City of Miami Beach v. Rocio Corp., 404 So.2d 1066, 1069 (Fla. 3d DCA 1981)); see also Barragan v. City of Miami, 545 So.2d 252, 254 (Fla.1989) (stating that the municipal home rule powers act "limits cities from legislating on any subject expressly preempted to state government by general law"). "Preemption essentially takes a topic or a field in which local government might otherwise establish appropriate local laws and reserves that topic for regulation exclusively by the legislature." Phantom of Clearwater, Inc. v. Pinellas County, 894 So.2d 1011, 1018 (Fla. 2d DCA 2005). "Express pre-emption requires a specific statement; the pre-emption cannot be made by implication nor by inference." Fla. League of Cities, Inc. v. Dep't of Ins. & Treasurer, 540 So.2d 850, 856 (Fla. 1st DCA 1989) (quoting Bd. of Trs. v. Dulje, 453 So.2d 177, 178 (Fla. 2d DCA 1984)); see also Phantom of Clearwater, Inc., 894 So.2d at 1018 ("Express preemption ... must be accomplished by clear language stating that intent."); Edwards v. State, 422 So.2d 84, 85 (Fla. 2d DCA 1982) ("An `express' reference is one which is distinctly stated and not left to inference."). However, "[t]he preemption need not be explicit so long as it is clear that the legislature has clearly preempted local regulation of the subject." Barragan, 545 So.2d at 254 (citing Tribune Co. v. Cannella, 458 So.2d 1075 (Fla.1984)).
The Fourth District held that the City's ordinance is preempted by the FCFA. It based this holding upon the language of the FCFA's policy statement as found in section 932.704, Florida Statutes (1995). We examine this holding by looking at the history and language of the FCFA, in particular section 932.704.

3. The Florida Contraband Forfeiture Act
In 1974, one year after the adoption of the Municipal Home Rule Powers Act, the Legislature adopted the Florida Uniform *1244 Contraband Transportation Act. Ch. 74-385, §§ 1-4, Laws of Fla., codified at §§ 943.41-.44, Fla. Stat. (1975). In 1980, the name of this act was changed to the Florida Contraband Forfeiture Act (FCFA).[4] The FCFA was later renumbered to sections 932.701-.704; and, in 1992, section 932.704 was amended to include a policy statement. In 1995, this policy statement was amended to its current form:
It is the policy of this state that law enforcement agencies shall utilize the provisions of the Florida Contraband Forfeiture Act to deter and prevent the continued use of contraband articles for criminal purposes while protecting the proprietary interests of innocent owners and lienholders and to authorize such law enforcement agencies to use the proceeds collected under the Florida Contraband Forfeiture Act as supplemental funding for authorized purposes. The potential for obtaining revenues from forfeitures must not override fundamental considerations such as public safety, the safety of law enforcement officers, or the investigation and prosecution of criminal activity. It is also the policy of this state that law enforcement agencies ensure that, in all seizures made under the Florida Contraband Forfeiture Act, their officers adhere to federal and state constitutional limitations regarding an individual's right to be free from unreasonable searches and seizures, including, but not limited to, the illegal use of stops based on a pretext, coercive-consent searches, or a search based solely upon an individual's race or ethnicity.
§ 932.704(1), Fla. Stat. (2005) (emphasis added).
Relying on this policy statement in section 932.704, the Fourth District held that the City's ordinance is expressly preempted by the FCFA. Specifically, the Fourth District reasoned that because section 932.704 provides that law enforcement agencies "shall utilize" the provisions of the FCFA when forfeiting contraband articles used for criminal purposes, the Legislature had expressly preempted "municipal criminal contraband forfeiture laws" to the State. 871 So.2d at 256. The Fourth District further found that under section 932.701(2)(a)(5) of the FCFA, the Legislature had expressly limited the forfeiture of vehicles to felony offenses. Id.
In her special concurrence, Judge May disagreed with this finding. She opined that because the FCFA is limited to felonies, the FCFA does not expressly preempt a municipality from legislating with regard to misdemeanors under its municipal home rule powers. Id. at 257 (May, J., concurring specially). We agree with Judge May on this point.

4. Application of Law of Preemption to the FCFA and the Ordinance
Contrary to the Fourth District's findings, the words "shall utilize" alone do not express preemption. This phrase should be read in context and with an eye toward its plain meaning. "We have recognized as `axiomatic' the principle that `all parts of a statute must be read together in order to achieve a consistent whole.' When possible, we `must give full effect to *1245 all statutory provisions and construe related statutory provisions in harmony with one another.'" Clines v. State, 912 So.2d 550, 557 (Fla.2005) (citation omitted) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)).
In section 932.704(1), the Legislature provides that "[i]t is the policy of this state that law enforcement agencies shall utilize the provisions of the Florida Contraband Forfeiture Act to deter and prevent the continued use of contraband articles for criminal purposes." The term "contraband" is a defined term under the FCFA. In pertinent part, the FCFA defines contraband as
[a]ny personal property, including . . . any . . . vehicle of any kind . . . which was used or was attempted to be used as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, whether or not comprising an element of the felony ....
§ 932.701(2)(a)(5), Fla. Stat. (2002) (emphasis added). When this statutory definition of contraband is placed in the FCFA's policy statement, that statement reads as follows:
It is the policy of this state that law enforcement agencies shall utilize the provisions of the [FCFA] to deter and prevent the continued use of contraband articles [i.e., any personal property, including... any ... vehicle of any kind... which was used or was attempted to be used as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, whether or not comprising an element of the felony] for criminal purposes.
§§ 932.701(2)(a)(5), .704(1), Fla. Stat. (emphasis added). Read in this manner, the FCFA's policy statement refers to contraband articles, such as vehicles, as those articles that are connected with the commission of felony offenses. Stated otherwise, for purposes of preemption, when the statutory definition of contraband is applied to the policy statement in section 932.704(1), the FCFA does not express any intent to preempt seizure and forfeiture in the context of nonfelony offenses.[5]
Furthermore, when the FCFA and the question of preemption are considered in *1246 light of the Municipal Home Rule Powers Act, the absence of an express legislative intent to preempt the field of forfeiture in enacting the FCFA becomes more significant. As of 1941, the law in Florida was that the subject of forfeiture is a field preempted to the Legislature, and a municipality had to expressly be given the authority to legislate in that field. City of Miami v. Miller, 148 Fla. 349, 4 So.2d 369, 370 (1941).[6] However, a change in this law occurred in 1973 when the Municipal Home Rule Powers Act was enacted. This act removed all general limitations on a municipality's power to legislate in a particular field. See § 166.021, Fla. Stat. (2002). Passed the year before the original version of the FCFA, the Municipal Home Rule Powers Act does not reserve to the Legislature the power to legislate in the field of forfeiture. One cannot lightly disregard this omission because the Legislature did retain field preemption in other areas. For example, in chapter 166 itself, the Legislature preempted the field in regard to ammunition sales. See § 166.044, Fla. Stat. (2002) ("No municipality may adopt any ordinance relating to the possession or sale of ammunition."). And since 1973, the Legislature has continued to use similar preemptive language in other contexts. For instance, regarding the lottery, the Legislature stated that "[a]ll matters relating to the operation of the state lottery are preempted to the state, and no county, municipality, or other political subdivision of the state shall enact any ordinance relating to the operation of the lottery authorized by this act." § 24.122(3), Fla. Stat. (2005); see also § 320.8249(11), Fla. Stat. (2005) ("The regulation of manufactured homes installers or mobile home installers is preempted to the state....").
Given the forgoing analysis, we determine that the FCFA does not preempt to the Legislature the field of vehicle seizure and forfeiture, much less impoundment, for misdemeanor offenses. Accordingly, in answering the certified question as rephrased, we hold that the FCFA does not preempt a municipality from adopting an ordinance that authorizes the seizure and impoundment of vehicles used in the commission of certain misdemeanors.

B. The Ordinance is Not in Conflict with the FCFA
As an alternative basis for its decision, the Fourth District held that even if the ordinance is not preempted by the FCFA, the ordinance is in conflict with the FCFA because it does not meet the procedural due process requirements of the FCFA. 871 So.2d at 256 (citing Dep't of Law Enforcement v. Real Prop., 588 So.2d 957 (Fla.1991)). We disagree. In addition to the absence of preemption, there is no conflict between the FCFA and the ordinance. The statute and the ordinance can coexist.
Certainly, "[m]unicipal ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute." Thomas v. State, 614 *1247 So.2d 468, 470 (Fla.1993). In other words, "[a] municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden." Id. (quoting Rinzler v. Carson, 262 So.2d 661, 668 (Fla.1972)). "[A]n ordinance penalty may not exceed the penalty imposed by the state"; however, "a municipality may provide a penalty less severe than that imposed by a state statute." Id. (citing Edwards, 422 So.2d 84).
The FCFA and the ordinance do not conflict because they authorize different remedies for different criminal conduct. The FCFA allows for the forfeiture of vehicles used in the commission of a felony. See § 932.701(2)(a)(5), Fla. Stat. (2002). The ordinance authorizes the impoundment of vehicles used in the commission of a misdemeanor. See § 101.46(A)(C), Ord. Additionally, the ordinance expressly does not apply when the vehicle is subject to seizure under the FCFA. The fact that the FCFA and the ordinance employ differing procedures to achieve their purposes does not amount to an improper "conflict" necessitating the invalidation of the ordinance. Therefore, the FCFA and the ordinance can coexist.
Although we find that the differing procedures employed by the FCFA and the ordinance do not create a conflict necessitating the invalidation of the ordinance, we agree with the Fourth District that the ordinance's procedures raise serious constitutional concerns. However, we do not address these concerns because (1) these constitutional concerns are independent of whether the FCFA and the ordinance are in conflict with each other, and (2) no constitutional issues were raised before us. The Fourth District is free to address these issues on remand, if appropriate.

C. The Impoundment Ordinance is Not a Forfeiture Scheme
Finally, we note that although impoundment and forfeiture are related concepts in the context of government seizure of personal property, they are not synonymous terms. Essentially, an impoundment is the temporary taking of tangible, personal property; a forfeiture is the permanent taking of real or personal property (tangible or intangible). For example, forfeiture has been defined as a permanent governmental taking of title and all rights to and in property that has been condemned for its role in a criminal violation. See United States v. Ursery, 518 U.S. 267, 284, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) ("Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct."). On the other hand, impoundment is defined as "to place (something, such as a car or other personal property) in the custody of the police or the court, often with the understanding that it will be returned intact at the end of the proceeding." Black's Law Dictionary 760 (7th ed.1999). The Virginia Court of Appeals noted the essential difference in the nature of the deprivation imposed by an impoundment as opposed to a forfeiture in Wilson v. Commonwealth, 23 Va.App. 443, 477 S.E.2d 765, 768 (1996): "A temporary impoundment of a vehicle is not a forfeiture, although it has characteristics of a forfeiture. Being temporarily deprived of one's vehicle until one pays a fee to release it also resembles a civil penalty."
Based on the foregoing definitions, contrary to the Fourth District's conclusion, the ordinance does not "effect a forfeiture." It does not seek to permanently *1248 divest the owner of all right and title to the vehicle. Rather, the ordinance authorizes the temporary deprivation of access to one's vehicle when it is used in the commission of a drug- or prostitution-related misdemeanor. Although the ordinance requires that the vehicle owner be temporarily deprived of the vehicle and requires that the owner pay a fee in exchange for the return of the vehicle, these requirements do not transform the impoundment ordinance into a "forfeiture scheme." The vehicle owner is never permanently deprived of the vehicle; rather, the vehicle's return is simply conditioned upon payment of an administrative fee and incidental costs. If a vehicle owner fails to pay the administrative fee and other costs, the vehicle is not "forfeited" as in the FCFA. Instead, the vehicle is disposed of as if it were lost or abandoned property under chapter 705, Florida Statutes (2005). § 101.46(F), Ord. Under chapter 705, the vehicle is sold. The money due the City is taken from the sale proceeds, and the balance is held in an account for the owner for up to one year.[7]

III. CONCLUSION
For the foregoing reasons, we conclude that the FCFA does not preempt a municipality such as the City of Hollywood from adopting an ordinance that authorizes the seizure and impoundment of vehicles used in the commission of certain misdemeanor offenses. Furthermore, though its procedures raise serious constitutional concerns, the ordinance is not in conflict with any provision of the FCFA. Accordingly, we quash the decision of the Fourth District Court of Appeal and remand for further consideration consistent with this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
[2] Hereinafter cited as "§ 101.46, Ord."
[3] Section 166.021 of the Municipal Home Rule Powers Act states in applicable part:

(1) As provided in s. 2(b), Art. VIII of the State Constitution, municipalities ... may exercise any power for municipal purposes, except when expressly prohibited by law.
....
(3) ... [T]he legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
....
(c) Any subject expressly preempted to state or county government by the constitution or by general law;
....
(4) The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution.
[4] The legislative history notes that the change in name followed the case of Baker v. State, 343 So.2d 622 (Fla. 4th DCA 1977), in which the Fourth District held that the Florida Uniform Contraband Transportation Act was specifically limited in its application to vessels, motor vehicles, and aircraft. See Fla. S. Comm. on Judiciary, CS for SB 93 (1980) Staff Analysis (April 30, 1980) (on file with comm.) (incorrectly attributing case to Second District Court of Appeal).
[5] Not only does the FCFA policy statement not express an intent to preempt the entire field of seizures and forfeitures for nonfelony offenses, it neither expressly nor impliedly preempts the field of seizures and forfeitures for vehicles. Section 932.704(1) states that "[i]t is also the policy of this state that law enforcement agencies ensure that, in all seizures made under the Florida Contraband Forfeiture Act, their officers adhere to federal and state constitutional limitations." (Emphasis added.) First, this clause implies that there may be seizures of vehicles not made under the FCFA. Indeed, in Florida, there are seizures of vehicles that are authorized under statutory provisions other than the FCFA. See, e.g., §§ 206.205, 322.34, 328.05, 328.07, Fla. Stat. (2005) (concerning seizure and forfeiture of marine vessels for various violations); §§ 329.10, 329.11, Fla. Stat. (2005) (concerning seizure and forfeiture of aircraft for various violations); §§ 206.205, 316.80, 212.16, 316.191, 319.35, 317.0017, 316.1935, 320.30, 322.34, Fla. Stat. (2005) (concerning seizure and forfeiture of automobiles). Second, although nearly all of these statutes require that the forfeiture of any seized vehicle must be made under the FCFA, there are other statutes that authorize both the seizure and the forfeiture of a vehicle without regard for the FCFA. For instance, seizures made under the Florida and Federal RICO Acts may result in the forfeiture of a vehicle, but the forfeiture is not governed by the FCFA. See § 895.05, Fla. Stat. (2005); Ruth v. Dep't of Legal Affairs, 684 So.2d 181 (Fla.1996); 18 U.S.C. § 1964 (2005); see also § 212.16, Fla. Stat. (2005) (allowing for confiscation and sale of vehicle under its own provisions).
[6] This Court stated in City of Miami v. Miller:

Forfeitures are considered harsh exactions and as a general rule are not favored. They will not be permitted by a municipality or other governmental entity unless the power to do so is conferred by express authority from the legislature. The power to declare a forfeiture is considered a field unto itself and will not be allowed as an incident to other penalties. The legislature must confer the power in terms and the City must provide for it pursuant to the power conferred.
Id. at 370.
[7] We also caution against comparing the City's vehicle impoundment ordinance with a temporary taking under the power of eminent domain. The Fourth District compared the City's ordinance to a temporary regulatory taking under the power of eminent domain, relying in part on Keshbro, Inc. v. City of Miami, 801 So.2d 864 (Fla.2001), to draw this analogy. Mulligan, 871 So.2d at 253. In Keshbro, we held that a temporary closure of a hotel and apartment by city nuisance abatement boards for drug- and prostitution-related activities was a compensable regulatory taking under the "economically beneficial use standard" outlined in Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). 801 So.2d at 875. The critical distinction is that, under the City's ordinance, the vehicle is temporarily taken under the municipality's police powers, not under the power of eminent domain. This distinction was emphasized in Bennis v. Michigan, 516 U.S. 442, 444, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), in which the United States Supreme Court held that a vehicle seized and forfeited for its use in violation of Michigan's indecency laws was not a "taking" because the vehicle was seized pursuant to the state's police power, not under eminent domain.